MORRIS SASS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6922. Promulgated June 28, 1927.

Pursuant to an agreement of guaranty, the petitioner, in the year 1919, paid partly in cash and partly in notes, certain notes, the payment of which he had guaranteed. *Held*, in the absence of evidence as to the worthlessness of the notes so paid by cash and notes, no deduction may be taken as a worthless debt or as a loss on account thereof.

*Robert Ash, Esq.*, for the petitioner.
*J. E. Halstead, Esq.*, for the respondent.

This proceeding is for a redetermination of a deficiency for the calendar year 1919 in the amount of $2,785.82, and for the calendar year 1921 in the amount of $933.80.

The sole issue involved herein is the deductibility of $24,153.12 paid by the petitioner to the National Reserve Bank of Kansas City, Mo. (hereinafter referred to as the Bank), under the circumstances outlined below.

### FINDINGS OF FACT.

The petitioner is an individual residing at Ardmore, Okla. For about thirty years he was engaged at Ardmore and in Davis County, Oklahoma, in the credit supply business, selling bonds to farmers and others in the surrounding territory. Prior to and including part of the year 1917, the petitioner was engaged also in the business of loaning money for the Bank on chattel mortgages.

The petitioner and the Bank had reached an oral agreement whereby the petitioner was to loan money for it at 10 per cent, taking as security chattel mortgages in the name of the Bank, collecting the loans made upon the maturity thereof and guaranteeing to the Bank any losses sustained by it by reason of the nonpayment of any money loaned through the petitioner. It was further agreed that the petitioner was to receive any interest over and above 10 per cent at which he might arrange loans. Pursuant to this agreement the petitioner arranged loans at rates above 10 per cent and took notes for the money to be loaned, together with chattel mortgages running to the Bank as security therefor. When he had accumulated several notes and mortgages for money to be loaned, he forwarded to the Bank the notes, copies of the mortgages, and his own note for the aggregate amount of the notes secured by the chattel mortgages plus 10 per cent interest. At the same time he drew a draft on the Bank for the face value of his own note. The proceeds of the draft were then turned over to the persons in the amounts of the notes given by them.

The note given by the petitioner was for the purpose of guaranteeing to the Bank collection of the money loaned with interest at the rate of 10 per cent.

Some time during the year 1917, the petitioner on account of the passage of a usury statute, ceased loaning money under the arrangement with the Bank and in the year 1919 the amount of $24,153.12 of loans made on chattel mortgages and guaranteed by the petitioner remained unpaid. When accounting was made in 1919, the petitioner, pursuant to his agreement, paid to the Bank $4,899.58 in cash and gave his note for $19,253.54 for the balance remaining unpaid.

The petitioner kept his books and accounts on a cash receipts and disbursements basis. Upon audit of the petitioner's income-tax return for the year 1919, the Commissioner disallowed as a deduction from gross income the amount of $19,253.54, represented by the note given to the Bank in that year, and allowed as a deduction from gross income the amount of $4,899.58 paid in cash to the Bank.

After the submission of this appeal, upon leave granted, the respondent amended his answer to deny the propriety of allowing as a deduction from gross income for the year 1919 the amount of $4,899.58, and asked that the deficiency asserted be increased by adding to the gross income for the taxable year 1919 that amount.

### OPINION.

LOVE: The petitioner claims that the transaction outlined in the findings of fact constitute a loss sustained under the provisions of section 214 (a) of the Revenue Act of 1918, and that the loss was sustained in the year 1919, since in that year he gave to the Bank his note for $19,253.54 and $4,899.58 in cash to cover unpaid notes held by the Bank, the payment of which the petitioner had guaranteed.

The respondent denies the right of the petitioner to deduct the amount represented by the note given in 1919 by the petitioner to the Bank and further denies the propriety of his allowing as a deduction for the year 1919 the amount of $4,899.58 paid in cash in that year to the Bank pursuant to his guaranty agreement. In denying the right of the petitioner to deduct either the note given or cash paid in the year 1919, the respondent argues that the petitioner, in fact, borrowed the money from the Bank and loaned that which he borrowed. He further argues in denying the deductions that no particular note given to the petitioner for the money loaned was determined to be worthless or charged off during the year 1919.

We believe that neither position taken is correct. The evidence shows that the loans were made by and in the name of the Bank.

It is clear that the petitioner was a guarantor of the loans made by him for the Bank.

In the year 1919, when the petitioner gave to the Bank his note for $19,253.54 and cash in the amount of $4,899.58, he was merely carrying out his agreement of guaranty. Upon carrying out the guaranty agreement the petitioner was subrogated to the rights of the Bank against the makers of the notes remaining unpaid at that time. The petitioner could have then proceeded against the makers of the notes subject, of course, to the defenses available against the Bank. The evidence is silent as to whether the unpaid notes held by the Bank were worthless at the time in 1919 that the petitioner carried out his agreement of guaranty. The evidence is equally silent as to whether the petitioner ascertained and determined any of the notes to be worthless in the year 1919, to which he had been subrogated to the Bank's rights. The fact that the petitioner as a guarantor of the notes was forced to pay them in cash, notes, or both, does not of itself indicate that he suffered any loss at that time. He may have, and conceivably could have, recovered later the amounts represented by the notes and secured by chattel mortgages.

In the absence of any evidence to show that the petitioner actually sustained a loss in any amount due to the notes in question, we must approve the Commissioner's determination in denying the deduction from gross income for the year 1919 the amount of $19,253.54 represented by the note given in that year to the Bank and we must also determine that the Commissioner erred in allowing as a deduction from gross income for the year 1919, the amount of $4,899.58 in cash paid to the Bank in that year pursuant to the guaranty agreement between the Bank and the petitioner.

*Judgment will be entered on 15 days' notice, under Rule 50.*